(119 App. Div. 808)

## DE WOLF v. FORD et al.

(Supreme Court, Appellate Division, First Department.  June 7, 1907.)

1. SLANDER—COMPLAINT—SETTING FORTH DEFAMATORY WORDS.

In a complaint for slander, the alleged defamatory words must be set forth in full, and it is not sufficient to state the substance and effect thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 201–204.]

2. INNKEEPERS—LIABILITY FOR INSULTS TO GUESTS.

An innkeeper is not liable, on an implied contract to protect his guests from insults by his employés, for the act of his servant in entering in the nighttime the room of a female guest against her protest, and in the presence of others using towards her insulting language and charging her with immoral conduct.

3. SAME.

It is not a trespass for the servant of an innkeeper to go into a room assigned to a guest, though the guest objects thereto.

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Catherine De Wolf against Simeon Ford and another. From a judgment of dismissal, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

James L. Bennett, for appellant.

Franklin Pierce (John C. Gulick, on the brief), for respondents.

INGRAHAM, J. The complaint was dismissed upon the trial upon the ground that no cause of action was alleged. It is alleged that the plaintiff went to the defendants' hotel with her brother and daughter, and was assigned a room; that about 1 o'clock in the morning, when the plaintiff was occupying the room assigned to her, one of the servants, employés, and agents of the defendants forced his way into the room of the plaintiff without her consent and against her protest, and in the presence of her brother and another person used towards her vile and insulting language, and addressed to her words imputing that she was guilty of improper and immoral conduct, and insulted her in many other ways, ordered her to leave said hotel, and threatened to publish her name in the daily papers as a disreputable person. There was no allegation of an assault. The plaintiff was not put out of the hotel, and the only wrong alleged to have been committed was that this employé forced his way into the room and used towards her insulting and defamatory language. The language is not set forth. Assuming that the defendant would be liable for a slander by the employé when engaged in carrying out the instructions of the former and within the scope of his authority, this action cannot be maintained, as the allegations are not sufficient to justify a recovery for slander. The words used are not given. What the servant said is merely characterized as insulting and degrading. To justify an action for slander, the alleged defamatory words must be set forth in full. It will not be sufficient to state the substance and effect of the words. 13 Enc. Plead. & Prac. p. 43, and cases cited.

The plaintiff, however, seeks to sustain the action upon the ground of a breach of an implied contract by which an innkeeper undertakes to protect his guests from insult or injury by his employés, and reliance is placed upon the implied contract of a common carrier. In Gillespie v. Brooklyn Hts. R. R. Co., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503, the Court of Appeals held that an action could be maintained against a railroad company for injuries inflicted upon a passenger by the defendant's agent, which consisted of insulting language. In that case the conductor called the plaintiff a "dead beat" and a "swindler" when plaintiff asked for the change to which he was entitled. It was held to be a breach of contract for the conductor to refuse to return to the passenger the change when an amount was given in excess of the fare, and that, there being a breach of the contract, the insult and indignity suffered by the passenger at the hands of the conductor, occasioning mental suffering, humiliation, wounded pride, and disgrace, might be considered upon the question of damages in determining the amount of injury occasioned by a breach of the contract; that the contract between the carrier and passenger calls for safe carriage, for safe and respectful treatment from the carrier's servants, and for immunity from assaults by them, or by other persons if it can be prevented by them; and that the carrier is responsible for the insulting conduct of its servants which stops short of actual violence. See, also, Chamberlain v. Chandler, 3 Mason, 242, Fed. Cas. No. 2,575. A contract that the innkeeper will protect his guests from insults has never been implied.

The plaintiff cited upon this question a case in the Supreme Court of California holding an innkeeper not liable, and one in the Supreme Court of Nebraska which holds an innkeeper liable for an assault committed by one of his servants upon a guest. The Nebraska doctrine was repudiated in Clancy v. Barker, 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653, by the Circuit Court of Appeals; Judge Sanborn, writing the opinion, holding that the innkeeper was not responsible for an assault committed by one of his employés. There was also cited a case in Pennsylvania (Rommel v. Schambacher, 120 Pa. 579, 11 Atl. 779, 6 Am. St. Rep. 732) by the court of common pleas holding an innkeeper liable for an assault committed in one of the public rooms of a hotel upon a guest. The rule in England from the earliest time seems to have been that the obligation of an innkeeper extends only to the movables of his guests. Thus it is said in Calye's Case, 1 Smith's Leading Cases (8th Am. Ed.) 249, subd. 3, that:

"These words, 'bona et catalla,' restrain the latter words to extend only to movables, and therefore by the latter words, if the guest be beaten in the inn, the innkeeper shall not answer for it; for the injury ought to be done to his movables, which he brings with him, and by the words of the writ the innholder ought to keep the goods and chattels of his guest, and not his person."

This case has been cited by the English courts as settling the law in relation to the liability of innkeepers. Strauss v. County Hotel & Wine Co., 12 Q. B. D. 27. In the note to this case in Smith's Leading Cases it is stated to be the leading case upon the subject of the

liability of innkeepers, and I cannot find that this rule has ever been questioned in England. The distinction between the undertaking of a common carrier towards its passengers and an innkeeper towards his guests is obvious. But the rule of the English common law that the obligation of an innkeeper towards his guests extends only to their movables, and not to their persons, seems to have been settled from the earliest time, and this action, therefore, cannot be sustained as based upon a violation of contractual obligation as between the plaintiff and the proprietors of the hotel at which she was a guest. If the servant, when in discharge of the authority conferred upon him by a master, commits an assault, or falsely detains or imprisons a guest, or performs other actionable wrongs, the question as to whether the master would be responsible for the wrongful act of the servant done in the course of his employment and in the exercise of the authority conferred by the master, based upon the general rules of "respondeat superior," is not involved upon this appeal.

It is certainly not a trespass for the servants of an innkeeper to go into a room, although it is assigned to a guest. In consequence of the nature of an innkeeper's duties in relation to his whole inn, he is required to constantly have access to all of the rooms, and it cannot be said that merely entering the room, with or without the consent of the occupant, is a trespass. So far as this action is concerned, the only actionable injury that is alleged to have been committed was a slander by the servant, and the complaint is not sufficient to sustain an action for slander, even assuming that the defendant would be responsible therefor.

It follows, therefore, that the judgment appealed from must be affirmed, with costs.

PATTERSON, P. J., and CLARKE and LAMBERT, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to agree with the other members of the court that the judgment appealed from should be affirmed. At the trial the complaint was dismissed, on defendant's motion, without taking any evidence, and therefore whether or not the ruling was correct must be determined in the same way as if the defendant had demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The complaint alleges that the defendants are engaged in managing and controlling a hotel for the entertainment of guests for hire; "that on the 5th day of June, 1905, this plaintiff, in company with her daughter and her brother, one George Catlin, called at said hotel and applied for rooms, giving their true and proper names, and stating the relationship of each to the other; that the plaintiff and her brother and daughter were thereupon received as guests of said hotel, and this plaintiff assigned to a room therein accordingly; that thereafter, and about 1 o'clock in the morning of the next day, while plaintiff was occupying the room so assigned to her, one of the servants, employés, and agents of the defendants, while in his regular employment at said hotel, forced his way into the said room of this plaintiff, without her consent and against her protest, while she was undressed and

without clothing except her nightdress, and addressed to her and in her presence, and in the presence of her said brother and another person, vile and insulting language, and accused her of being a disreputable person, and addressed to her words imputing that she was guilty of improper and immoral conduct, and insulted her in many other ways * * * and furthermore ordered her to leave said hotel, and threatened to publish her name in the daily papers as a disreputable person."

I think the complaint states a cause of action. It alleges the breach of an implied contract, entered into when the plaintiff became a guest at the hotel, which was that the defendants would treat her properly, furnish her with lodging and food, and protect her, so far as reasonably could be done, against insult and injury. It is true that in the Calye's Case, 1 Smith's Leading Cases (8th Am. Ed.) 249, subd. 3, cited in the opinion of Mr. Justice INGRAHAM, the English courts held that an innkeeper was liable for the personal property of a guest, but not for an injury to his person; but this case was decided over 300 years ago. The law, if anything, is a progressive science, and it has been the boast of the members of the legal profession that it not only keeps abreast, but is ahead, of the varying changes which are constantly being made for the comfort and improvement of human society. For this reason I do not think a rule which was applied 300 years ago in determining whether an innkeeper was liable, considering the advancement that has since been made and the changes that have taken place in the mode of living, is decisive of the question. The precise question here presented has not heretofore arisen in this state, so far as I have been able to discover; but it has, to some extent at least, in some of the other states. Rommel v. Schambacher, 120 Pa. 579, 11 Atl. 779, 6 Am. St. Rep. 732; Curran v. Olson, 88 Minn. 307, 92 N. W. 1124, 60 L. R. A. 733, 97 Am. St. Rep. 517; Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803, 85 Am. St. Rep. 446; Overstreet v. Moser, 88 Mo. App. 72; Clancy v. Barker, 98 N. W. 440, 71 Neb. 83, 69 L. R. A. 642, 22 Cyc. p. 1080.

The rule to be applied to innkeepers, so far as the treatment of a guest is concerned, is analogous to the one applied to common carriers. A common carrier is liable to a passenger for an injury to his feelings caused by insulting language of an employé. This liability is put upon the ground that such acts constitute a breach of its contract, which obligates it, not only to transport the passenger, but to accord to him respectful and courteous treatment and protect him from insult from strangers and its own employés. Palmeri v. Manhattan Ry. Co., 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136, 29 Am. St. Rep. 632; Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503, and cases there cited; Busch v. Interborough Rapid Transit Co., 80 N. E. 197, 187 N. Y. 388. The words of Judge Story in Chamberlain v. Chandler, 3 Mason, 242, Fed. Cas. No. 2,575, while used with reference to the liability of a common carrier, are, as it seems to me, equally applicable to the proprietor of a hotel. He says, referring to the contract:

"It is a stipulation, not for toleration merely, but for respectful treatment, for that decency of demeanor which constitutes the charm of social life, for that attention which mitigates evils without reluctance, and that promptitude which administers aid to distress. In respect to females it proceeds yet farther. It includes an implied stipulation against general obscenity, that immodesty of approach which borders on lasciviousness, and against that wanton disregard of the feelings which aggrevates every evil and endeavors by the excitement of terror and cool malignity of conduct to inflict torture upon susceptible minds. * * * It is intimated that all these acts, though wrong in morals, are yet acts which the law does not punish; that if the person is untouched, if the acts do not amount to an assault and battery, they are not to be redressed. The law looks on them as unworthy of its cognizance. The master is at liberty to inflict the most severe mental sufferings in the most tyrannical manner, and yet, if he withholds a blow, the victim may be crushed by his unkindness. He commits nothing within the reach of civil jurisprudence. My opinion is that the law involves no such absurdity. It is rational and just. It gives compensation for mental sufferings occasioned by acts of wanton injustice, equally whether they operate by way of direct or of consequential injuries."

To hold that the proprietor of a hotel is liable if a lady's handbag be stolen from her room while she is a guest, but he is not liable if one of his employés, by his direction, invades the privacy of her room against her protest, when she is disrobed and in the act of retiring, and uses vile and insulting language to her, is to my mind abhorrent. It is but another way of asserting that the law is powerless to punish the grossest outrage. It is generally supposed, when one as a guest, is assigned a room in a hotel, that insures him the privacy of his home so long as he pays the price charged for the room, conforms his conduct to the rules of the house, and behaves himself properly. It is not true, as I understand the law, that the proprietor of a hotel, or his servants, has the right, without the consent of a guest, at any time to enter his room. This is not the law, and, if it is, it ought not to be, because it is against good morals and the general law of decency, and whenever the proprietor of an inn, either himself or by his servants, commits such acts, he is liable in damages. The damage to be awarded is, of course, compensatory; that is, the damage for the humiliation or injury to the feelings which one suffers by having the privacy of her room invaded and being addressed in insulting and abusive language. This, of course, does not include an injury to the character, and I do not understand that the complaint is drafted on that theory, but is to recover for the breach of an implied contract, and to that extent it states a cause of action.

The judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event.